| | |
|---|---|
| MARTRICE CAMPBELL,<br><br>    Plaintiff,<br><br>v.<br><br>The CITY OF CHICAGO, Illinois, a municipal corporation, and former Independent Police Review Authority (IPRA) Chief Administrator SCOTT ANDO,<br><br>    Defendants. | Case No. 16-cv-6000<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

This case involves a dispute between Plaintiff Martrice Campbell ("Plaintiff") and Defendants Scott Ando ("Defendant Ando") and the City of Chicago ("the City"). Plaintiff brings two causes of action: (1) First Amendment retaliation pursuant to 42 U.S.C. § 1983 (Count I); and (2) retaliatory discharge under Illinois common law (Count II). Compl. [1]. On October 19th, 2016, Defendants filed a joint motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Defs.' Mot. Dismiss [23]. For the reasons explained below, Defendants' motion is granted in part and denied in part.

### I.    Background

Plaintiff's Complaint [1] sets forth the following relevant facts, which the Court accepts as true for the purposes of Defendants' motion. Plaintiff is a former investigator at the City of Chicago's Independent Police Review Authority ("IPRA"), an agency created to investigate allegations of misconduct by Chicago police officers.

Compl. [1] ¶¶ 4-9. At all times relevant to Plaintiff's Complaint, Defendant Ando served as either First Deputy Chief Administrator or Acting Chief Administrator of IPRA. *Id.* ¶ 5.

On January 10, 2013, Plaintiff observed her coworker, Brian Lockhart ("Lockhart"), display certain behavior near Plaintiff's workstation. *Id.* ¶¶ 13-14. Specifically, Lockhart appeared visibly upset and spoke of killing his supervisors and himself. *Id.* ¶ 15. In response, Plaintiff escorted Lockhart into an interview room, searched him for weapons, and questioned him regarding his threatening statements. *Id.* ¶ 16. During this discussion, Lockhart disavowed any intent to harm anyone at IPRA. *Id.* ¶ 19. By the end of the conversation, Plaintiff was convinced that the only danger Lockhart posed was to himself. *Id.* As a result, Plaintiff contacted the City of Chicago's Employee Assistance Program, and, at their suggestion, drove Lockhart to the hospital for further treatment. *Id.* ¶ 20.

Plaintiff alleges that when Defendant Ando learned of Lockhart's behavior, however, Defendant Ando contacted the Chicago Police Department and requested that Lockhart be arrested and prosecuted. *Id.* ¶ 22. Lockhart was later charged with threatening public officials and went to trial in state court. *Id.* ¶¶ 23-24.

Plaintiff was subpoenaed by the government as a witness in Lockhart's trial. *Id.* ¶ 25. Plaintiff testified on October 16, 2014. *Id.* ¶ 26. Lockhart was acquitted on October 31, 2014. *Id.* ¶ 28. Plaintiff claims that although she testified truthfully, Defendant Ando sought to have Plaintiff charged with perjury because

he was angry over Lockhart's acquittal. *Id.* ¶¶ 27, 29-30.[1] Plaintiff further alleges that, as a result of her truthful testimony, Defendant Ando fired Plaintiff on June 8, 2015. *Id.* ¶ 32.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). A motion to dismiss tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir. 1998). To survive a motion to dismiss, a complaint must first provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice" of what the claim is "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Second, the complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). That is, the allegations must raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability

---

[1] Plaintiff was never charged. Compl. [1] ¶ 31.

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The "amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged," but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. Of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). In evaluating the complaint, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of Plaintiff. *Iqbal*, 556 U.S. at 678.

## III. Discussion

Plaintiff brings two causes of action in response to her termination: (1) First Amendment retaliation under 42 U.S.C. § 1983 against Defendant Ando (Count I); and (2) retaliatory discharge under Illinois common law against both Defendant Ando and the City (Count II). The Court discusses each claim in turn.

### A. First Amendment Retaliation (Count I)

To adequately plead a First Amendment retaliation claim, Plaintiff must allege that: (1) her speech was constitutionally protected; (2) she suffered a deprivation likely to deter free speech; and (3) her speech was at least a motivating factor in Defendants' actions. *Spalding v. City of Chicago*, 24 F. Supp. 3d 765, 775 (N.D. Ill. 2014).

Under the first element, while public employees "do not surrender all of their First Amendment rights by reason of their employment," *Morales v. Jones*, 494 F.3d 590, 595 (7th Cir. 2007), such rights "are not without limit." *Mescall v. Rochford*,

4

No. 75-cv-3913, 1976 WL 1672, at *3 (N.D. Ill. May 3, 1976); *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (holding that the First Amendment protects a public employee's right to speak only "in certain circumstances"). To "ensure that public employee speech is afforded the proper constitutional protections," *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 509 (7th Cir. 2007), the Seventh Circuit applies the balancing test first announced by the Supreme Court in *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), and clarified in *Connick v. Myers,* 461 U.S. 138, 147-48 (1983). Under the *Connick-Pickering* test, a public employee's speech is constitutionally protected if: (1) she made the speech as a private citizen; (2) the speech addressed a matter of public concern; and (3) her interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service. *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (citing *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)). The last element is commonly referred to as "*Pickering* balancing." *Id.*

### 1. Plaintiff's Speech Was a Matter of Public Concern

Defendants argue that Plaintiff's alleged speech did not constitute a matter of public concern. Defs.' Mem. Supp. Mot. Dismiss [24] 12. The Court finds Defendants' assertion unavailing. While the exact boundaries of the public concern test "are not well defined," *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83 (2004), the Supreme Court has articulated "guiding principles" that "accord broad protection to speech to ensure that courts themselves do not become inadvertent censors." *Snyder v. Phel*ps, 562 U.S. 443, 452 (2011). Under these precepts, speech involves

5

matters of public concern when "it can be fairly considered as relating to any matter of political, social, or other concern to the community," or when "it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane v. Franks*, 134 S. Ct. 2369, 2380 (2014) (quotations omitted).

Ultimately, the inquiry turns upon the "content, form, and context" of the speech. *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). Of these three factors, "content is most important," *Gustafson v. Jones*, 290 F.3d 895, 907 (7th Cir. 2002), but "no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said." *Snyder*, 562 U.S. at 454. To this end, the Court will also inquire about "the speaker's motive in making the statements at issue." *Button v. Kibby-Brown*, 146 F.3d 526, 529-30 (7th Cir. 1998); *Marshall v. Porter Cty. Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir. 1994) ("Motive may play some part in determining whether the speech is of public concern because speech that promotes a purely private interest is not protected.").

Unlike other circuit courts, the Seventh Circuit rejects "a blanket rule according absolute First Amendment protection to communications made in the course of a lawsuit." *Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1505 (7th Cir. 1994); *Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 419 (7th Cir. 1988) ("[N]ot every legal gesture—not every legal pleading—is protected by the First Amendment."); *cf. Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d

6

1565, 1578 (5th Cir. 1989) ("When an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern."); *Pro v. Donatucci*, 81 F.3d 1283, 1288 (3d Cir. 1996). This nuanced approach recognizes that, although some litigation "seeks to advance political or other ideas" (i.e. matters of public concern), most lawsuits "are generally [pursued] with other ends in view than promoting debate on issues of public importance." *Yatvin*, 840 F.2d at 420. In other words, most litigation "has private rather than public objectives." *Id.* at 419.

The specific facts alleged here, however, place this case squarely on the "public" side of the line. The Seventh Circuit has previously described the content of Plaintiff's speech—the safety of public employees—as a matter of public concern. *See Houskins v. Sheahan*, 549 F.3d 480, 492 (7th Cir. 2008). In terms of context, Plaintiff's speech occurred in *another* employee's criminal trial, pursuant to a government subpoena. The Supreme Court has long endorsed "every man's duty to give testimony before a duly constituted tribunal," particularly those related to criminal proceedings. *See Ullmann v. United States,* 350 U.S. 422, 439 n. 15 (1956); *United States v. Calandra*, 414 U.S. 338, 345 (1974) ("The duty to testify has long been recognized as a basic obligation that every citizen owes his Government."); *People of State of N. Y. v. O'Neill*, 359 U.S. 1, 11 (1959) ("A citizen cannot shirk his duty, no matter how inconvenienced thereby, to testify in criminal proceedings and grand jury investigations in a State where he is found."); *Blair v. United States*, 250 U.S. 273, 281 (1919) ("[I]t is clearly recognized that the giving of testimony and the

7

attendance upon court or grand jury in order to testify are public duties which every person within the jurisdiction of the government is bound to perform upon being properly summoned."). The Court finds that upon these facts, Plaintiff's testimony pertained to a matter of public concern.

## 2. Plaintiff's Speech Satisfies *Pickering* Balancing

Defendants also argue that Plaintiff's claim fails the balancing test "between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the State's interest, as an employer, in promoting the efficiency of the public services it performs." *Pickering v. Board of Education,* 391 U.S. 563, 568 (1968); Defs.' Mem. Supp. Mot. Dismiss [24] 12. Courts "do not require a showing of *actual* disruption"; rather, they look "to the ordinary or foreseeable effect of the conduct in controversy to determine whether it would be reasonably calculated to create division or to have impaired discipline." *Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1502 (7th Cir. 1994) (internal quotations omitted). While "appropriately reconciling these competing interests in particularized factual scenarios is a difficult task," the Seventh Circuit has propounded relevant factors that inform the Court's analysis: (1) whether the statement would create problems in maintaining discipline by immediate supervisors or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her daily responsibilities; (4) the time, place, and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one

8

on which debate was vital to informed decision-making; and (7) whether the speaker should be regarded as a member of the general public. *Id.*

Applying the foregoing factors, the *Wright* court held that "an employee summoned to give sworn testimony in a judicial proceeding has a compelling interest in testifying *truthfully* and the government employer can have an offsetting interest in preventing her from doing so only in the rarest of cases." *Id.* at 1505 (emphasis in original). Thus, "truthful testimony on matters of public concern normally is protected speech." *Id.*

At the same time, the *Wright* court also held that "if an employee has presented *false* testimony both sides of the *Pickering* balance may be significantly altered," because an employer "has a greater interest in curtailing erroneous statements than correct ones, and still a greater interest in curtailing deliberate falsehoods." *Id.* (emphasis added). On this score, Defendants argue that Defendant Ando reasonably believed Plaintiff testified falsely at trial. In support of their claim, Defendants attached an August 24, 2016 arbitration decision which found that Plaintiff "was deliberately disingenuous when she testified at [Lockhart's] criminal trial." Defs.' Mem. Supp. Mot. Dismiss [24] Ex. A at 42. At this preliminary stage, however, the Court is generally confined to the facts alleged in Plaintiff's complaint. *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). Of course, under Rule 10(c), a "copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes," including "a limited class of attachments to Rule 12(b)(6) motions." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661

9

(7th Cir. 2002). But "limited class" only includes documents that "are referred to in the plaintiff's complaint and are central to his claim," such as a contract. *Id*. Plaintiff's arbitration decision does not fall within this exception. Defendants' argument, therefore, is premature.

### 3. Defendant Ando is Not Entitled to Qualified Immunity

Defendant Ando's request for qualified immunity is similarly flawed. Defs.' Mem. Supp. Mot. Dismiss [24] 9-11. Governmental actors "performing discretionary functions enjoy qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Chaklos v. Stevens*, 560 F.3d 705, 710 (7th Cir. 2009) (quoting *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007)). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). If officers "of reasonable competence could disagree on the issue of whether or not an action was constitutional, immunity should be recognized." *Estate of Rudy Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012).

Defendant Ando claims that he terminated Plaintiff because of his "serious concern regarding the veracity of Plaintiff's statements" made during trial. Defs.' Mem. Supp. Mot. Dismiss [24] 10-11. Upon these facts, Defendants claim that "it certainly was reasonable" for Defendant Ando "to believe he was not violating a

10

'clearly established statutory or constitutional right' by terminating Plaintiff for what he believed to be her perjured testimony." *Id.*

Once again, Defendants ignore the operative legal standard. At this preliminary stage, the Court must accept all well-pleaded allegations as true and must draw all reasonable inferences in favor of Plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This includes Plaintiff's claim that she "truthfully answered all the questions she was asked at Lockhart's trial." Compl. [1] ¶ 27. Qualified immunity is "not available to a defendant who knowingly punishes an employee for uttering such speech." *Wright*, 40 F.3d at 1505. Whether Defendant Ando reasonably believed Plaintiff's testimony to be untruthful is a question of fact to be resolved at a later date.

### 4. The Court is Not Bound by Plaintiff's Prior Arbitration Proceedings

As a final salvo, Defendants request deference to the arbitrator's factual findings. Defs.' Mem. Supp. Mot. Dismiss [24] 13-15. Count I, however, is predicated upon the First Amendment and 42 U.S.C. § 1983, not Plaintiff's arbitration agreement or decision. Defendants' reliance upon *Papapetropoulous v. Milwaukee Transport Services, Inc.*, 795 F.2d 591 (7th Cir. 1986) and *Brownlee v. City of Chicago*, 983 F. Supp. 776 (N.D. Ill. 1997), therefore, is misplaced. In those cases, the plaintiffs alleged procedural due process violations arising out of prior arbitration hearings (or lack thereof), and the plaintiff in *Papapetropoulous* attached a copy of his arbitration award to his complaint. *Papapetropoulous*, 795 F.2d at 592, 598; *Brownlee*, 983 F. Supp. at 777. Here, Plaintiff's Complaint is

silent regarding her administrative proceedings, and her claim is not "based upon alleged infirmities in the arbitration proceeding itself." *Papapetropoulous*, 795 F.2d at 597. In fact, Plaintiff filed her complaint on June 8, 2016, more than two months *before* the arbitrator issued a decision. Compl. [1]. In short, Plaintiff is "asserting a statutory right independent of the arbitration process." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 54 (1974). Thus, the Court will not rely upon the arbitrator's decision as a basis for dismissal.

### B. Illinois Common Law Retaliatory Discharge (Count II)

#### 1. Retaliatory Discharge Cannot Be Brought Against an Individual

Moving to Count II, Defendants assert that Plaintiff's common law retaliatory discharge claim cannot be brought against an individual, here, Defendant Ando. Defs.' Mot. Dismiss [23] ¶ 3; Defs.' Mem. Supp. Mot. Dismiss [24] 4-5 (citing *Stenson v. Town of Cicero*, No. 03-cv-6642, 2005 WL 643334, at *22 (N.D. Ill. Mar. 15, 2005); *Smith v. Waukegan Park Dist.*, 896 N.E.2d 232, 236 (Ill. 2008), *as modified on denial of reh'g* (Sept. 22, 2008) ("[T]he tort of retaliatory discharge may be committed only by the employer.") (emphasis removed)). Plaintiff concedes this point in her response. Pl.'s Resp. Defs.' Mot. Dismiss [32] 10. Therefore, Defendants' motion [23] is granted as agreed as it relates to Plaintiff's Count II claim against Defendant Ando.

#### 2. The Tort Immunity Act Does Not Apply

Defendants further argue that Plaintiff's retaliatory discharge claim is barred by the Illinois Local Governmental and Governmental Employees Tort

12

Immunity Act ("Tort Immunity Act"), 745 ILCS 10/1-101, *et seq*. Defs.' Mem. Supp. Mot. Dismiss [24] 5. Under the Tort Immunity Act, a public employee "serving in a position involving the determination of policy or the exercise of discretion" is not liable for an injury "resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. By extension, a local public entity "is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109.

An employee is eligible for immunity "if he holds *either* a position involving the determination of policy *or* a position involving the exercise of discretion." *Ellis v. City of Chicago*, 272 F. Supp. 2d 729, 735 (N.D. Ill. 2003) (quoting *Harinek v. 161 N. Clark St. Ltd. P'ship,* 692 N.E.2d 1177, 1181 (Ill. 1981) (emphasis in original)). Immunity will not attach, however, unless the injury "results from an act performed or omitted by the employee in determining policy *and* in exercising discretion." *Id.* (emphasis in original); *Van Meter v. Darien Park Dist.,* 799 N.E.2d 273, 285 (Ill. 2003) ("[O]ur cases have made clear that there is a distinction between situations involving the making of a policy choice and the exercise of discretion. Municipal defendants are required to establish *both* of these elements in order to invoke immunity under section 2–201."). Moreover, because the Tort Immunity Act "is in derogation of the common law, it must be strictly construed against the public entities involved." *Van Meter,* 799 N.E.2d at 286.

Policy determinations "are those acts that require the balancing of competing interests to make a judgment as to what solution will best serve those interest[s]."

13

*Ellis*, 272 F. Supp. 2d at 735. Discretionary acts "are unique to a particular public office and involve the exercise of judgment." *Id.* (citing *Corning v. East Oakland Tp.,* 670 N.E.2d 350, 352 (Ill. App. Ct. 1996)). Hiring and firing decisions are discretionary acts. *Id.* (citing *Johnson v. Mers,* 664 N.E.2d 668, 675 (Ill. App. Ct. 1996)); *Mann v. Montgomery*, No. 84-cv-11020, 1998 WL 122779, at *3 (N.D. Ill. Mar. 16, 1998), *aff'd sub nom.*, 182 F.3d 922 (7th Cir. 1999).

Here, although Defendant Ando's decision to terminate Plaintiff constituted a discretionary act, it cannot be categorized as a policy determination. On this point, the Seventh Circuit's ruling in *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 679 (7th Cir. 2009), is instructive. In *Valentino*, a municipal employee brought a retaliatory discharge claim against the Village of South Chicago Heights, its mayor, and village administrator, after she was fired for speaking out against suspected nepotism and "ghost payrolling." *Id.* at 668. In response, the defendants claimed that they terminated plaintiff for surreptitiously copying employee sign-in sheets. *Id.* at 669. The district court granted summary judgment to the defendants, in part because it found the Village immune under the Tort Immunity Act. *Id.* at 668-69. On appeal, the Seventh Circuit reversed. *Id.* at 678-79. The court confirmed that the Tort Immunity Act immunizes an individual defendant "only to the extent that the action he is being sued for involves *both* the making of a policy choice *and* the exercise of discretion." *Id.* at 679 (emphasis added). The court was unconvinced that the mayor's decision to fire the plaintiff constituted a "policy decision":

14

> [the mayor's] one-time decision to fire one employee, Valentino, does not amount to a "judgment call between competing interests." In fact, we are at a loss to identify any competing interests at all. Rather, [the mayor] either made a one-time decision to fire Valentino because she copied the sign-in sheets or because she spoke out against the Village's practice of ghost payrolling, or some combination thereof. The Village offers no evidence that it had a policy against copying the sign-in sheets either before or after Valentino's termination. Even if such a policy did exist, we cannot see how the decision to create it might involve competing interests and judgment calls that would meet the Illinois courts' definition of a "policy decision." Therefore, the decision to fire Valentino does not amount to a policy decision as defined by the Illinois courts.

*Id.* at 679-80. The same reasoning applies here. Consequently, the City is not immune from suit.

### 3. Plaintiff Adequately Pleads the Elements of a Claim

Finally, Defendants assert that Plaintiff has failed to adequately allege the elements of retaliatory discharge. Defs.' Mem. Supp. Mot. Dismiss [24] 6-9. To state a valid retaliatory discharge cause of action, an employee must allege: (1) that the employer discharged the employee; (2) in retaliation for the employee's activities; and (3) in violation of a clear mandate of public policy. *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009).

Defendants argue that Plaintiff's allegations do not evince a clearly mandated public policy. The Court disagrees. Although there "is no precise definition of the term," public policy generally concerns "what is right and just and what affects the citizens of the State collectively." *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878 (Ill. 1981). It is found "in the State's constitution and statutes

15

and, when they are silent, in its judicial decisions." *Id*. Regardless of its source, the matter must ultimately "strike at the heart of a citizen's social rights, duties, and responsibilities." *Id*. at 879-80.

Here, Plaintiff alleges that her employment was terminated because she gave truthful testimony, pursuant to a subpoena, at the criminal trial of a co-worker. Compl. [1] ¶¶ 25, 27, 40. There "is no public policy more basic, nothing more implicit in the concept of ordered liberty, than the enforcement of a State's criminal code." *Palmateer*, 421 N.E.2d at 879. As a result, there "is a clear public policy favoring investigation and prosecution of criminal offenses." *Id*. at 880. This interest is threatened if, as alleged here, an employee is terminated for cooperating with law enforcement. The law "is feeble indeed if it permits [an employer] to take matters into its own hands by retaliating against its employees who cooperate in enforcing the law." *Id*.

Defendants further claim that Plaintiff cannot establish a causal relationship between her testimony at Lockhart's trial and her subsequent discharge because she alleges a non-retaliatory motive for her termination: Defendant Ando's reasonable belief that she committed perjury. Defendants misread the Complaint. Plaintiff does not allege that Defendant Ando *believed* Plaintiff committed perjury; Plaintiff merely alleges that Defendant Ando *accused* Plaintiff of perjury. Compl. [1] ¶ 30. This false accusation ostensibly derived from Defendant Ando's

16

disapproval of Lockhart's acquittal, not a judgment regarding the veracity of Plaintiff's testimony.[2]

For the above reasons, Defendants' motion [23] is denied as it relates to Plaintiff's Count II claim against the City.

## IV.  Conclusion

For the reasons discussed above, Defendants' Motion to Dismiss [23] is granted in part and denied in part.  Defendants' motion is granted as it relates to Plaintiff's retaliatory discharge claim (Count II) against Defendant Ando. Defendants' motion is denied as it relates to Plaintiff's First Amendment retaliation claim under 42 U.S.C. § 1983 (Count I), and Plaintiff's retaliatory discharge claim (Count II) against Defendant City of Chicago.

Date: March 6, 2017

Entered:

_____
John Robert Blakey
United States District Judge

---

[2] Defendants also claim that Plaintiff has pleaded herself out of court because she alleges that Defendant Ando—not the City—discharged her.  Defendants' argument defies common sense. Indeed, the Complaint states that "Defendant Ando fired Plaintiff from her job at IPRA."  Compl. [1] ¶ 32.   At the time, however, Defendant Ando was serving as IPRA's First Deputy Chief Administrator, Acting Chief Administrator, or Chief Administrator.  Compl. [1] ¶ 5.  In other words, it can be reasonably inferred that Defendant Ando was the "agent or employee of the employer who carried out the discharge of the plaintiff on the employer's behalf." *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 569 (Ill. 1998).  This is sufficient for pleading purposes.  *See id.* ("Logically speaking, only 'the employer' has the power to hire or fire an employee.  Obviously, an agent or employee of the employer may carry out that function on the employer's behalf, but it is still the authority of the employer which is being exercised.").